United States District Court
Southern District of Texas
**ENTERED**
March 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRENDAN GAYTAN, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-316 |
| | § | |
| BRYAN COLLIER, *et al*, | § | |
| | § | |
| Respondents. | § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Petitioner Brendan Gaytan, an inmate at the McConnell Unit in Beeville, Texas, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Gaytan raises claims of actual innocence, ineffective assistance of counsel, and prosecutorial misconduct, along with claims of the denial of due process in his state habeas proceedings. D.E. 1, 3.

Respondent Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ) filed a motion for summary judgment (D.E. 9), to which Gaytan has responded (D.E. 13). United States Magistrate Judge Julie K. Hampton issued a Memorandum and Recommendation (M&R), recommending that the Court grant TDCJ's motion, dismiss this action, and deny a certificate of appealability. D.E. 14. Pending before the Court are Gaytan's objections to the M&R. D.E. 19. For the following reasons, the Court OVERRULES the objections and ADOPTS the findings and conclusions of the Magistrate Judge.

## STANDARD OF REVIEW

The district court conducts a de novo review of any part of the magistrate judge's disposition that has been properly objected to.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000).  As to any portion for which no objection is filed, a district court reviews for clearly erroneous factual findings and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

## PROCEDURAL BACKGROUND

Throughout his objections, Gaytan complains that defects in the state habeas proceedings require the application of a de novo standard of review rather than the deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  He presents his arguments by emphasizing what did not happen at the state level, rather than what did happen.  Consequently, the Court has reconstructed the state habeas proceedings for a better understanding of what deprivation of due process and disregard of the merits Gaytan suffered, if any.

As a preliminary matter, the Court notes that Gaytan's capital murder conviction, for which he received a sentence of life imprisonment, was affirmed on direct appeal to the Thirteenth Court of Appeals on May 4, 2017.  D.E. 8-3 (addressing ineffective assistance of trial counsel and the evidentiary matter of allowing the jury to view a demonstration video).   The Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review. *Gaytan v. State*, No. PD-0554-17 (August 23, 2017).  Consequently,

Gaytan turned to state habeas corpus procedures under Article 11.07 of the Texas Code of Criminal Procedure and Rule 73 of the Texas Rules of Appellate Procedure.

## A. State Habeas Proceedings

**Original Habeas Application**.  Pursuant to Article 11.07, § 3(b), Gaytan filed his original habeas application in the state convicting court on August 16, 2018.  D.E. 9-2, p. 114.  He raised seven complaints, which he argued involved controverted fact issues.  *See* D.E. 8-51.  In particular, he complained that:

1. He is actually innocent and his conviction violates the Texas Constitution;

2. He is actually innocent and his conviction violates the United States Constitution;

3. The trial court deprived him of due process by allowing a highly prejudicial reenactment video to be played before the jury in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

4. The trial court deprived him of due course of law by allowing a highly prejudicial reenactment video to be played before the jury in violation of Article I, §§ 13 and 19 of the Texas Constitution;

5. Appellate counsel was ineffective for failing to raise the inadmissibility of Eloy Silva's testimony as a jailhouse informant in violation of the Sixth Amendment to the United States Constitution;

6. The jurors engaged in juror misconduct in violation of the Texas Constitution; and

7. The jurors engaged in juror misconduct in violation of the United States Constitution.

D.E. 8-54, pp. 9-21.  At that time, he had the opportunity to submit new evidence.  *See* Tex. R. App. P. 73.7 (official comment to 2017 change).  Nothing in the record indicates that he did so.

**The State's Answer**.  The State filed its response on August 28, 2018.  D.E. 8-54, p. 26.  The record does not reflect that the State filed any evidence in support of its answer.  Instead, it briefed the following arguments:

1. Actual innocence is not a method for attacking the sufficiency of the evidence to convict; it requires newly discovered evidence.  None of the arguments Gaytan makes stem from evidence that was not fully available at the time of trial;

2. Any complaint regarding the demonstration video was waived by not submitting it on direct appeal of the conviction;[1]

3. Gaytan's claim of ineffective assistance of appellate counsel fails because he did not show by a preponderance of the evidence that he was prejudiced by any alleged failure of counsel; and

4. Any claim of juror misconduct was waived by failure to complain of it on direct appeal of the conviction.

D.E. 8-54, pp. 26-41.

**Convicting Court's Recommendation**.  After notice to the State's attorney under Art. 11.07, § 3(b) and its opportunity to respond, "it shall be the duty of the convicting court to decide whether there are controverted, previously unresolved facts material to the legality of the applicant's confinement."  Article 11.07, § 3(c).  On September 17, 2018, the convicting court found—in conclusory, summary form—that there was no need for a hearing or expansion of the record and that the State's arguments were correct.  D.E. 8-54, p. 60.  It recommended that the TCCA deny the application for writ of habeas corpus.  *Id.*

**Remand to Convicting Court/Amended Habeas Application**.  Immediately upon the convicting court's determination, the record is referred to the TCCA for a final

---

[1]   While Gaytan complained on direct appeal of his conviction regarding the demonstration video, the issue was presented as an abuse of discretion under the Texas Rules of Evidence, not as a constitutional claim, as he later complained in his habeas application.  D.E. 8-54, pp. 57-59.

disposition.  Art. 11.07, § 5.  According to Texas Rule of Appellate Procedure 73.4(b)(2), the state district clerk is to forward the record to the TCCA for decision, copying the parties and giving them ten days to object to any findings of fact or conclusions of law.  *See also*, Art. 11.07, § 7.  Contrary to this procedure, Gaytan did not receive timely notice of the convicting court's recommendation.  *See* D.E. 8-51.  His counsel, exercising independent diligence, discovered that a disposition had been made by reviewing the electronic docket sheet on October 1, 2018.  Counsel then immediately requested notice of the order, which was not received from the clerk until October 5, 2018—all of this occurring after expiration of the ten days to object.  *See* D.E. 8-51.

Nonetheless, on October 10, 2018, Gaytan filed his "Unopposed Motion for Remand for an Evidentiary Hearing and Applicant's Objection to the Trial Court's Finding of Fact and Conclusion of Law."  D.E. 8-51.[2]  Additionally, a habeas applicant has the opportunity to amend an application for writ of habeas corpus until the TCCA acts on the application.  *Ex Parte Saenz*, 491 S.W.3d 819, 824 (Tex. Crim. App. 2016).  Gaytan took that opportunity to file an amended application and supplementation of the record.

**Amended Habeas Application**.  On November 30, 2018, Gaytan filed in the convicting court his amended application for writ of habeas corpus.  D.E. 8-52.  In particular, he raised the following issues:

> 1. Gaytan is actually innocent and his conviction violates the Texas Constitution;

---

[2]  Gaytan states that the TCCA denied the motion for remand on October 31, 2018, speculating that this occurred because he had filed an amended habeas application in the meantime.  D.E. 19, p. 4.  However, the record reflects that the amended application was not filed until November 30, 2018—after the stated date of denial.  This issue does not require resolution in order to address the merits of this federal habeas proceeding.

2. Gaytan is actually innocent and his conviction violates the United States Constitution;

3. Trial counsel provided ineffective assistance with respect to preparation and cross-examination of the State's key witnesses;

4. Appellate counsel provided ineffective assistance by failing to raise the inadmissibility of witness Silva's testimony;

5. The State committed a *Brady*[3] violation with respect to witness Silva's testimony under federal law; and

6. The State committed a *Brady* violation with respect to witness Silva's testimony under Texas law.

D.E. 8-52, pp. 9-18.

Gaytan also filed a supporting memorandum of law and multiple exhibits.  D.E. 8-52, pp. 23-188.  More specifically, he offered:

- Three transcripts and two DVDs of interviews of witness Valent, illustrating his different eyewitness versions of the events of the crime, allegedly supporting the argument that he perjured himself on the stand or was an unreliable witness not entitled to credibility (Ex. 1, pp. 50-84, Ex. 10, pp. 107-25, Ex. 11, pp. 129-48, Ex. 12, p. 152, and Ex. 13, p. 154);

- The State's motion to dismiss Gaytan's co-defendant, Cruz Salazar, for insufficient evidence (Ex. 2, p. 87);

- The affidavit of co-defendant Salazar providing Gaytan with an alibi (Ex. 3, p. 89);

- Pictures of Gaytan's arms, with tape measurements, documenting his birth defect, which Gaytan asserts makes him incapable of firing the weapons used in the crime; physical attributes that Valent did not describe when identifying Gaytan as the shooter (Ex. 4, pp. 91-93);

- The affidavit of Texas G. Burrell, a licensed private investigator with law enforcement experience, who testified that the State's ballistics expert's testimony was misleading or incorrect and that, from a photo analysis,

---

[3]  "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Gaytan's stature precluded him from firing the weapons in the trajectory alleged  (Ex. 5, pp. 95-96);

- Pictures of the crime scene (Ex. 6, 7, 8, pp. 98-102);

- Pictures of the vehicle allegedly involved in the crime and the vehicle owned by Gaytan to illustrate their differences and shedding doubt on Valent's testimony (Ex. 9, pp. 104-05);

- Excerpts from the Corpus Christi Police Department (CCPD) investigation report showing Valent's inconsistent statements and refusal to take a polygraph test (Ex. 14, 15, 16, 17, pp. 156-62);

- A photograph of a damaged car that the CCPD used in its reenactment video that was unlike the vehicle alleged to have been used in the crime (Ex. 18, p. 164);

- Photographs of Gaytan's tattoos, which Valent did not describe when identifying Gaytan as the shooter (Ex. 19, pp. 166-67);

- An affidavit and two declarations of Eric Dean Perkins regarding ineffective assistance of trial counsel (Ex. 20, pp. 169-72, Ex. 24, pp. 182-83, and Ex. 25, pp. 185-88);

- The affidavit of Joseph Ron Barroso regarding ineffective assistance of appellate counsel (Ex. 21, pp. 174-75);

- The declaration of Micah Hoevelman describing inaccuracies in the testimony of the State's ballistics expert, Carolyn Martinez, and stating that trial counsel should have hired a ballistics expert to controvert Martinez (Ex. 22, pp. 177-78); and

- The declaration of Mark Stevens, an attorney experienced in the defense against capital murder charges, stating that competent trial representation requires hiring a ballistics expert (Ex. 23, p. 180).

This evidence was offered in addition to the trial record to substantiate each of Gaytan's claims and is the same evidence on which Gaytan relies in this federal habeas proceeding.

In his memorandum, Gaytan made the following arguments:

1. That the Salazar alibi evidence is newly discovered evidence. Alternatively, even if Gaytan was aware of it at the time of trial, it is treated as newly discovered evidence because it was previously unavailable pursuant to Salazar's Fifth Amendment privilege and his counsel's protection;

2. A birth defect that affected the development of Gaytan's arms left them too short to fire the long guns alleged to be involved in the crime;

3. Valent's testimony—the only testimony linking Gaytan to the crime scene—was unreliable and self-contradictory, if not perjured;

4. A hearing is required to address newly discovered evidence that is exculpatory;

5. A showing of a *Brady* violation does not require proof of prejudice. Instead, a constitutional violation shows that the suppression of the evidence undermines confidence in the jury's verdict.  There is no harmless error exception to its application;

6. The Nueces County District Attorney's office did not disclose the full extent of its use of Silva as an informant, thus impairing Gaytan's trial counsel from fully preparing and cross-examining the only witness to Gaytan's alleged confession;

7. Gaytan's appellate counsel's deficiencies in raising only two issues on the appeal of a capital murder conviction was so clear that prejudice can be presumed.  This is particularly true because the admissibility of the jailhouse informant testimony without a limiting jury instruction was an issue that had been preserved but was not raised on appeal; and

8. Gaytan's trial counsel was deficient in failing to properly prepare to cross-examine the State's witnesses and failed to limit or impeach the expertise and testimony of Martinez, the State's ballistics expert.

D.E. 8-52, pp. 23-46.

**State's Supplemental Answer**.  In response to the amended habeas application, the State filed a supplemental answer on December 28, 2018.  D.E. 8-53, p. 11.  It repeats its arguments that actual innocence cannot be used to collaterally attack the sufficiency of the evidence to convict.  With respect to both ineffective assistance of counsel claims, it argues that Gaytan failed to establish by a preponderance of the evidence either prong of the *Strickland v. Washington,* 466 U.S. 668, 688 (1984) test:  (a) objectively unreasonable performance as an attorney, and (b) a reasonable probability that the outcome of the proceedings would have been different.

With respect to the alleged *Brady* violation, the State first notes that the burden of proof is on Gaytan and it objects to Gaytan's evidence on the basis of hearsay. It then attaches the affidavit of prosecutor Doug Mann, which states that no informant source file on witness Silva existed because maintenance and retention of such files was not required at the time. Therefore, there was no file to provide to Gaytan. D.E. 8-53, p. 37. Moreover, Mann testified that he went over Silva's rap sheet with Gaytan's counsel prior to trial. Mann also consulted with the other prosecutors that had worked with Silva and communicated to Gaytan's counsel everything he learned about Silva's history as an informant for the State. *Id*.

**Gaytan's Reply**. On January 22, 2019, Gaytan responded to the State's supplemental answer, defending against the State's legal theories and also identifying what he contends are disputed issues of material fact that required a hearing. D.E. 8-52, pp. 189-93; D.E. 8-53, pp. 4-8. With respect to actual innocence, Gaytan suggests that his alibi evidence obtained from Salazar is newly discovered evidence because Salazar was not available to him until after Gaytan's conviction and the dismissal of the charges for the same crime against Salazar.

With respect to ineffective assistance of appellate counsel, he claims that he satisfied both prongs of *Strickland*. Appellate counsel clearly failed to present the preserved issue of Silva's status as a jailhouse informant and the need for a jury instruction requiring corroborating evidence. With that, he argues that prejudice is presumed. With respect to ineffective assistance of trial counsel, he contends that Rick Rogers was unprepared to effectively cross-examine or rebut the State's ballistics expert. Because of the importance

of the State's evidence in that regard and lack of other evidence connecting Gaytan to the crime, Rogers' lack of preparation was prejudicial.

With respect to the *Brady* claims, Gaytan responds that the hearsay objection is inappropriate because a habeas court may consider affidavits. And if there is a controverting affidavit, then a fact question exists that requires a hearing. Nothing in Gaytan's reply suggests that Gaytan needed additional time to conduct discovery or to present additional evidence.

**Convicting Court's New Recommendation**. The convicting court then filed its "Findings of Fact, Conclusions of Law, and Recommendation" on January 25, 2019. D.E. 8-53, p. 39. That court found—again in conclusory, summary form—no necessity for hearing or expansion of the record, and that the State's arguments were correct and it prevailed on both prongs of the *Strickland* test with respect to both trial and appellate counsel's performance. The court recommended denying the amended writ. *Id*.

**No Opportunity to Object**. Gaytan complains that he did not receive notice of the convicting court's recommendation on his amended habeas application in time to file any objections. D.E. 19-1; Art. 11.07, § 7; Tex. R. App. P. 73.4(b)(2). He argues that he was therefore denied an opportunity to be heard in the TCCA before it effectively adopted the convicting court's recommendation. However, he does not detail what objections he would have asserted that were not already of record.

**TCCA's Disposition**. On September 11, 2019, the TCCA denied the writ without written order. D.E. 8-50. It is undisputed that because the TCCA did not issue its own written order, any review of the state habeas proceedings involves a "look through" to the

convicting court's findings of fact, conclusions of law, and recommendation. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999); *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999).

### B. Federal Habeas Proceeding

On October 21, 2019, Gaytan filed his petition for writ of habeas corpus in this Court.  D.E. 1.  He states the following grounds:

1. Actual innocence, rendering the conviction a violation of the Fifth and Fourteenth Amendments to the United States Constitution, based on:

    a. Salazar's alibi evidence;

    b. The lack of phone data placing Gaytan at the scene of the crime;

    c. The weakness and inconsistency of Valent's identification of Gaytan as the shooter and the make and model of the getaway car; and

    d. Gaytan's stature, making him incapable of shooting the long guns that the shooter allegedly wielded or shooting at the trajectory supported by the evidence;

2. Ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution, based on:

    a. Failure to hire a ballistics expert and prepare for and execute a cross-examination of the State's ballistics expert, Martinez;

3. Ineffective assistance of appellate counsel in violation of the Sixth Amendment to the United States Constitution for failure to raise the following issues on appeal:

    a. The admissibility of Silva's testimony as more prejudicial than probative—as a due process issue;

    b. The State's violations of the motion in limine with respect to Gaytan's gang membership and the convicting court's denial of Gaytan's motion for mistrial on that basis;

    c. The convicting court's failure to submit an instruction on the requirement of corroborating evidence for jailhouse informant testimony; and

4.  The State's failure to supply all of its information on informant Silva, in violation of *Brady*.

D.E. 1.  Gaytan seeks relief in the form of discovery, an evidentiary hearing, expansion of the record, and reversal of the conviction with either a rendering of judgment in favor of Gaytan or a remand for new trial.  *Id.*

## DISCUSSION

### A.  Whether AEDPA Deference Under 28 U.S.C. § 2254(d) Applies

Gaytan objects that the Magistrate Judge did not apply a de novo standard of review to the convicting court's findings of fact, conclusions of law, and recommendation. Instead, she applied AEDPA's deferential standard.  Gaytan argues that a de novo standard is required, under which the requested summary judgment is inappropriate "because the state [convicting] court did not sufficiently address Gaytan's claims.  Its merits decision was not based on an adequate proceeding."  D.E. 19, p. 2.

**Cases Do Not Support De Novo Review**.  For this argument, Gaytan relies primarily on the opinion in *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998).  In *Nobles*, the Fifth Circuit first had to determine if AEDPA applied because the habeas-related proceedings straddled AEDPA's April 24, 1996 effective date.  The court determined that, as a matter of timing, AEDPA and its deferential standard of review did apply.  However, it considered recognizing an exception.

The court was faced with the question whether the state's use of false or misleading evidence denied the defendant due process under the three-prong test of *Giglio v. United States*, 405 U.S. 150, 153–154 (1972) ((1) the evidence was false, (2) the evidence was

12

material, and (3) the prosecution knew that the evidence was false).  In particular, the court had to resolve the materiality prong, a mixed question of law and fact.  *Id*. at 415.  The state court's order had not made specific findings of materiality.  As the Magistrate Judge here reasoned—consistent with the Fifth Circuit in *Nobles*—the question of whether the AEDPA standard applies is whether the state habeas court's decision was on the merits.

In *Nobles*, the court wrote,

> We feel some reservation about applying the more stringent AEDPA standards to this claim because we are not convinced that the state habeas court sufficiently addressed Nobles's *Giglio* claim.  As the district court observed, the state habeas court did not address the "materiality" prong of *Giglio* but simply ruled, without evidentiary hearing, that "applicant's allegations do not suggest . . . the presentation of false evidence by the state."

*Nobles*, 127 F.3d at 416.  The Fifth Circuit ultimately did not decide whether it was a decision on the merits triggering the deferential AEDPA standard or whether a de novo standard applied because, after analysis, the result was the same under either standard.  *Id*.

More recently, the Supreme Court of the United States has clarified that the deferential AEDPA standard applies even when the state court decision is unexplained and lacks express findings, so long as the matter was presented.  "There is no text in the statute requiring a statement of reasons. The statute refers only to a 'decision,' which resulted from an 'adjudication.'"  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id*.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. To address this statement of presumption, Gaytan's arguments must be construed as asserting that the convicting court's failure to permit discovery, expand the record, provide notice for the purpose of asserting objections, and conduct an evidentiary hearing are "indications or state-law procedural principles to the contrary." However, his petition fails to demonstrate that there is any substance to such claims.

While it took an amended state court habeas proceeding to accomplish it, Gaytan did have an adequate opportunity to assert every claim he brings here. No procedural barriers prevented him from raising any violation of federal law he wished to include. He was able to conduct discovery and amass additional evidence, all of which was submitted to the convicting court for its consideration. The State offered some controverting evidence and Gaytan was permitted the opportunity to close the argument with his reply.

Gaytan also cites *Foster v. Chatman*, 136 S. Ct. 1737, 1746 (2016), arguing that it conducted a de novo review in a habeas case. But that representation is not accurate. First, that capital murder death penalty case involved an impediment to the state court's review of the claims in the habeas petition. At issue was a *Batson*[4] claim that had been raised and adjudicated on direct appeal of the conviction. Despite the petitioner's offer of newly

---

[4]  "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).

discovered evidence from the state's litigation file that was acquired through an Open Records Act request, the state habeas court determined that it was precluded from reconsidering the matter pursuant to the doctrine of res judicata.

The Georgia convicting court's determination was based on reviewing the entire record to see if the petitioner had demonstrated a sufficient change in the facts to overcome the res judicata bar. Consequently, it issued findings of fact before denying relief. Petitioner then sought a certificate of probable cause so that he could appeal the habeas decision to the Georgia Supreme Court. The certificate was denied and the matter went directly to the Supreme Court of the United States, which granted certiorari.

In proceeding with its review of the case, the Supreme Court stated, "we defer to state court factual findings unless we conclude that they are clearly erroneous." *Foster*, 136 S. Ct. at 1747. It did not conduct a de novo review. However, it did conclude that the fact findings were clearly erroneous and reversed and remanded. Nothing in the *Foster* opinion counsels in favor of de novo review by a federal habeas court where there has been no impediment to the state convicting court's consideration of the evidence in adjudicating the state habeas petition and where there is an absence of clear and convincing evidence that fact findings are clearly erroneous. The *Foster* case is inapposite here.

Gaytan summarily cites a number of other death penalty cases for the proposition that federal courts routinely evaluate state habeas decisions under a de novo standard. Each case is distinguishable or does not support Gaytan's proposition. In *Panetti v. Quarterman*, 551 U.S. 930 (2007), no AEDPA deference applied because Eighth Amendment-specific procedure entitled the death penalty prisoner to an evidentiary hearing on competency to

be executed at the time the execution was to be carried out.  The state habeas court had denied the prisoner the opportunity to hire an expert and present a mental evaluation, despite multiple indications of insanity.  Gaytan did not receive the death penalty.  He did not have any guarantee of an evidentiary hearing.  His complaints did not require the habeas court to appoint any experts on his claims.  And contrary to *Panetti*, Gaytan did, in fact, present his evidence.

In *Rompilla v. Beard*, 545 U.S. 374 (2005), de novo review of the prejudice prong of the *Strickland* ineffective assistance of counsel test was justified only because the record showed that the state habeas court had not considered or made a decision on that prong.  Under AEDPA deference, the Supreme Court found that the state habeas court had unreasonably applied federal law with respect to the first prong of *Strickland*:  adequacy of defense counsel's representation.  In the absence of the state court's consideration of the prejudice prong, the federal court had no alternative but to consider it de novo.  In other words, exclusive and erroneous reliance on one prong did not entitle the habeas decision to any deference or presumptions with respect to the second prong.  Gaytan's claims, in contrast, show no errors under AEDPA deference with respect to any part of the convicting court's habeas analysis and no issue left unaddressed.

Contrary to Gaytan's assertion, the Supreme Court in *Ramdass v. Angelone*, 530 U.S. 156, 178 (2000), did not apply a de novo standard of review.  Rather it determined what the applicable law was and held that the state court's decision was not contrary to that law or an unreasonable application of it—applying the AEDPA standard of § 2254(d)(1).  *Id.* at 178.  In the course of its opinion, it rejected the prisoner's effort to bring in policy

16

considerations by way of a law review article because it was based on a questionable survey, which would have constituted new evidence that it could not consider. *Id*. at 172-73. Likewise, the Supreme Court in *Weeks v. Angelone*, 528 U.S. 225, 237 (2000), applied the deferential standard of review of § 2254(d), despite the fact that the state habeas petition had been dismissed as jurisdictionally barred on timeliness grounds.

The Supreme Court in *Miller-El v. Dretke*, 545 U.S. 231 (2005), applied § 2254(d)(2), which required fact findings to be presumed correct unless demonstrated by clear and convincing evidence to be erroneous pursuant to § 2254(e)(1). *Id*. at 240. In making that determination, the Court limited itself to the evidence of record in the state proceedings. *Id*. In that *Batson* challenge, the Court noted that the record reflected such things as prosecutorial misrepresentations of the facts, recitations that omitted adverse facts, and patterns of voir dire questioning and the exercise of strikes that belied any assertions of race-neutrality. In that case, the relevant fact findings were found to be erroneous by clear and convincing evidence that was already in the record. *Id*. at 266. In Gayton's case, the Magistrate Judge adequately considered all of the record evidence in determining that the fact findings properly enjoyed the presumption of correctness.

**Procedural Complaints Do Not Support De Novo Review**. Gaytan's complaints about the state habeas procedure are that (a) he was not provided an evidentiary hearing, and (b) he did not get timely notice of the convicting court's recommendation so that he could have filed objections for the TCCA's consideration. Both are meritless, even if these procedural issues are reviewed de novo.

*Denial of Hearing*.  Gaytan has not identified any additional discovery he would like to have taken or any request to the convicting court to take discovery.  He has not identified any additional evidence that he has discovered, but did not have the opportunity to offer.  And nothing indicates that the convicting court refused to consider any of the extensive evidence that Gaytan did offer.

While Gaytan suggests that an evidentiary hearing was required because of his new alibi evidence and the State's controverting *Brady* evidence, his authority does not support that contention.[5]  Gaytan cites *Wiggins v. Smith*, 539 U.S. 510, 534 (2003), arguing that it "is like this case. The trial judge's findings of facts and conclusions of law, which comprised four sentences on one full page, made conclusory recommendations that Gaytan's counsel was not deficient, did not discuss the prejudice prong of *Strickland*.  The recommendation also contained no legal or factual analysis." D.E.19, 11–12.

Gaytan's reliance on *Wiggins* is misplaced.  In *Wiggins*, the Supreme Court did not consider the adequacy of the explanation of the Maryland Court of Appeals' opinion; nor did it require a hearing.  Rather, the trial court had conducted proceedings four years post-conviction in which the petitioner's trial counsel testified regarding an ineffective assistance claim.  So the case did not present the issue of whether the petitioner would have been entitled to such a hearing had he not been afforded one.  *Wiggins* does not address

---

[5] Gaytan writes that "when a habeas corpus petitioner alleges facts not resolved in state proceedings that, if proved would entitle him to the writ, he is entitled to an evidentiary hearing." *Rummel v. Estelle*, 590 F.2d 103, 105 (5th Cir. 1979).  He also cites *Siripongs v. Calderon*, 35 F.3d 1308, 1318 (9th Cir. 1994).  Both cases were decided prior to the enactment of AEDPA.  Before the enactment, a habeas petitioner had a right to a hearing in the state court when certain conditions were met under § 2254.  That right was changed by AEDPA.  *See Valdez v. Cockrell*, 274 F.3d 941, 948–49 (5th Cir. 2001) (discussing § 2254 before and after AEDPA's enactment).

what circumstances require a hearing or when the presentation of issues by affidavit is sufficient.  Based on the evidence of record in *Wiggins*, the Supreme Court held that the petitioner had received ineffective assistance of counsel under *Strickland* and reversed and remanded for further unspecified proceedings.

While the Supreme Court did order a hearing in *In re Davis*, 557 U.S. 952 (2009), the order does not supply any reasoning that makes the decision applicable here.  Rather, the concurring opinion, refuting a dissent, supplies facts that distinguish the case.

> [S]even of the State's key witnesses have recanted their trial testimony; several individuals have implicated the State's principal witness as the shooter; and "no court," state or federal, "has ever conducted a hearing to assess the reliability of the score of [postconviction] affidavits that, if reliable, would satisfy the threshold showing for a truly persuasive demonstration of actual innocence."

*Id*. (Breyer, J., concurring).  "The substantial risk of putting an innocent man to death clearly provides an adequate justification for holding an evidentiary hearing."  *Id*.

Gaytan did not receive the death penalty.  No witness has recanted.  And no witness suggests that the key witness, Valent, was the shooter.  So while, in extraordinary circumstances, the Court might require a hearing on habeas to determine actual innocence of a petitioner facing execution, those circumstances are not present here.  *See also House v. Warden*, 547 U.S. 518, 538-539 (2006) (a habeas hearing had been held and the evidence of actual innocence was not sufficiently compelling to merit relief); 28 U.S.C. § 2254(e)(2) (prescribing the rare circumstances under which a hearing on habeas can be ordered).

Under state law, the convicting court could properly adjudicate the habeas action on affidavits and—because the same judge that presided over the criminal trial adjudicated

the habeas action—personal recollection. "To resolve [controverted, previously unresolved facts which are material to the legality of the applicant's confinement] the court *may* order *affidavits*, depositions, interrogatories, additional forensic testing, and *hearings*, as well as using *personal recollection*." Tex. Code Crim. P. Ann., art. 11.07, § 3(d) (emphasis added). Thus, hearings are not required. And the failure to conduct a hearing does not suggest that the evidence submitted was disregarded.

Specifically, the Fifth Circuit has written that "a full and fair hearing in state court is not a prerequisite to applying AEDPA's deferential scheme." *Freeney v. Davis*, 737 F. App'x 198, 204–05 (5th Cir. 2018) (quoting *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010)); *see also* 28 U.S.C. § 2254(e) (addressing the presumptions to be accorded to state habeas decisions and rare circumstances under which a new hearing may be ordered). And nothing suggests that the convicting court could not arrive at a reasonable decision on the basis of the evidence and the trial record in the absence of a hearing.

*Denial of Opportunity to Object*. Gaytan has not listed any objections or arguments (not already in the state court's record) that he would have raised had he received timely notice prior to the TTCA's denial without written order. Moreover, it is not contrary to, or an unreasonable application of, clearly established federal law to deny a petitioner an opportunity to object or seek clarification of the state court's order. *Freeney*, 737 F. App'x at 205–06 (quoting *Green v. Thaler*, 699 F.3d 404, 415-16 (5th Cir. 2012)).

**Conclusion**. Gaytan has failed to show that the law accords him a de novo review of his habeas petition. Because the convicting court received all of Gaytan's additional habeas evidence, had before it all of Gaytan's issues and arguments, and was not required

to hold an evidentiary hearing, the Court holds that it adjudicated Gaytan's state habeas petition on the merits. The Court holds that Gaytan does not have a right to present objections and has failed to demonstrate prejudice from the convicting court's failure to provide timely notice of its findings of fact, conclusions of law, and recommendations, which is the only other procedural error of which he complains.

Consequently, the deferential standard of AEDPA applies. The Court SUSTAINS Gaytan's objection to the Magistrate Judge's M&R to the extent that it complains that she did not expressly dispose of this issue brought in response to the motion for summary judgment. However, the Court OVERRULES the objection on its merits insofar as Gaytan argues that a de novo standard applies to the habeas proceedings now before the Court.

### B.  Gaytan's Objections to the M&R on the Merits

The only clear objection to the Magistrate Judge's analysis is whether she applied the correct standard when she evaluated Gaytan's complaints under AEDPA deference. That objection has been overruled above. Otherwise, Gaytan's objections involve advocacy for his view of the case on the federal issues he raises. In the course of his briefing, he does not identify any specific error in the Magistrate Judge's AEDPA analysis. Rather, he suggests only that a different outcome should apply.

Gaytan's approach fails to satisfy the requirement that objections to M&Rs specifically identify error. A general objection that merely reiterates a previous response, without pointing out the specific findings or conclusions of the Magistrate Judge that are challenged, is insufficient to comply with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72. *E.g., 4 B's Realty 1530 CR39, LLC v. Toscano*, 818 F. Supp. 2d 654, 659

(E.D.N.Y. 2011).  The district court's review is not intended to be a second bite at the apple. *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998).  For that reason, any objection to the decision on the merits is OVERRULED.

Gaytan's approach is contrary to AEDPA deference in which the Court views the record supporting the state habeas decision in a manner consistent with that decision. Nonetheless, the Court will examine the AEDPA standard and each of the decisions on the merits.

**AEDPA Standard**.  To succeed on a petition under § 2254(d), a petitioner must prove that:  (1) the constitutional adjudication by the state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1), (2).  A court reviews pure questions of law and mixed questions of law and fact under § 2254(d)(1).  *Martin v. Cain*, 246 F.3d 471, 475–76 (5th Cir. 2001).  Because Gaytan's claims regarding ineffective assistance of counsel and *Brady* involve mixed questions of law and fact, they are determined under § 2254(d)(1).  *Id.*   Further, the Supreme Court indicated that when a claim is adjudicated on the merits under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance.  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision involves an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.*

Both clauses under § 2254(d)(1) command a district court to review a state court's substantive findings and compare them to those made by the Supreme Court. *See Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014) ("In reviewing a state court's decision under the 'unreasonable application' prong, we focus on 'the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.'") (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002)). When a state court adjudication is unaccompanied by any explanation, a district court must hypothesize the reasons or theories that could have supported the denial of relief. *Floyd v. Vannoy*, 894 F.3d 143, 160–61 (5th Cir. 2018) (citing *Hittson v. Chatman*, 576 U.S. 1028 (2015)). Thus, a summary opinion and the failure to provide a hearing by itself are not part of the calculus and are insufficient to show that a state court's decision is contrary to or an unreasonable application of federal law.

### 1. Ineffective Assistance of Counsel

Gaytan objects to the Magistrate Judge's conclusion on both of his ineffective assistance of counsel claims. D.E. 19, p. 21–29. To establish ineffective assistance of counsel, a petitioner must show that the counsel's performance was so seriously deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment," and the petitioner was prejudiced by the deficient performance in that it deprived him of a fair trial. *Strickland,* 466 U.S. at 687. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Richter, 562 U.S. at 109.

When an ineffective-assistance-of-counsel claim is subject to AEDPA, the pivotal question is "whether the state court's application of the *Strickland* standard was unreasonable." *Id*. at 101. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.' . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. (internal citations omitted). This is a higher standard than the standard articulated in *Strickland*. As the Supreme Court explained, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Id*. at 105. (internal citations omitted).

### a. Trial Attorney Rick Rogers

Gaytan argues that, contrary to the Magistrate Judge's recommendation, his trial counsel performed deficiently and he suffered prejudice because Rogers, Gaytan's lead counsel at trial, failed to hire a ballistics expert to rebut the testimony of Carolyn Martinez, the State's ballistics expert.[6] Further, citing to *Rompilla*, 545 U.S. at 374, Gaytan argues that the convicting court's recommendation is an unreasonable application of clearly

---

[6] Gaytan argues that he is only required to show a reasonable probability that he suffered prejudice. D.E. 19, p. 21. As indicated above, Gaytan must demonstrate that the state court's decision was unreasonable.

established federal law because it lacked any analysis regarding the prejudice prong under *Strickland*. Finally, Gaytan argues that the Magistrate Judge erred by stating that *Hinton v. Alabama*, 571 U.S. 263 (2014), and *United States v. Haines*, 803 F.3d 713 (5th Cir. 2015), were distinguishable. D.E. 19, p. 21–25.

**Uncalled Witnesses.** "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 690–91).

Gaytan has failed to show any legal authority establishing a minimum Sixth Amendment requirement that a ballistics expert must be hired in every case involving ballistics evidence. Neither does he submit legal authority suggesting such a standard for the necessity of experts to avoid an ineffective assistance of counsel claim. Instead, he submits the affidavit of an attorney that states, "When ballistics or weapons are involved, qualified and competent experts ***should be*** obtained . . . ." Stevens Affidavit, D.E. 13-1, p. 33 (emphasis added). One attorney's opinion,[7] which does not purport to state a Sixth Amendment standard, is an insufficient basis for holding that there was clearly established law to that effect as determined by the Supreme Court of the United States, as § 2254(d)

_____

[7] Gaytan also submits the declaration of Micah Hoevelman. D.E. 13-1, p. 53. As the Magistrate Judge determined, that declaration lacks probative value because it does not state that he has any qualifications or basis for his presumed expertise and opinions.

requires.  Rather, the established general standard is that the attorney conduct a reasonable investigation, after which strategic decisions are "virtually unchallengeable."  *Wiggins*, 539 U.S. at 521.

Gaytan does not overcome the strong presumption that Rogers's trial strategy was reasonable.  Gaytan's other trial attorney, Eric Perkins, a witness on whom Gaytan heavily relies, indicated that the decision to not hire an expert was a strategic decision based on the evidence available.  Both he and Rogers made the decision because "other areas of investigation would bear more fruit than ballistics or firearms analysis since there was little or no evidence connecting Mr. Gaytan to the crime or crime scene." D.E. 13-1, p. 28–3; *See Richter*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").  Gaytan has not shown that such a strategic decision was established as a general Sixth Amendment violation such that the convicting court's determination was contrary to, or involved an unreasonable application of, clearly established federal law.

Because Gaytan's failure-to-investigate claim involves the failure to call a potential witness, an even more stringent Sixth Amendment standard applies.  *Butler v. Davis*, 745 F. App'x 528, 524 n.4 (5th Cir. 2018).  Complaints regarding uncalled witnesses are not favored "because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008)).  To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness

was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day*, 566 F.3d at 538.

In this case, the Magistrate Judge found that Gaytan has not shown that his witnesses were available to testify and would have done so, or that their testimony would have been admissible and favorable. D.E. 14, p. 31–33. Gaytan does not object to this finding, and the Court will review this recommendation under a clearly erroneous standard. First, Gaytan identified Micah Hoevelman and Mark Stevens. Neither witness is a ballistics expert. Nor do they indicate that they would have been available to testify at trial and would have done so. D.E. 13-1, p. 33, 53-54.

Further, Gaytan presented Texas Burrell, who identified himself as an expert in ammunition, firearms, and firearm use and effects, and would have been available and would have testified if called at trial. D.E. 13-1, p. 49-51. However, the Magistrate Judge found that Burrell's testimony would not have been favorable because Burrell's testimony does not contradict Martinez's testimony. D.E. 14, p. 31-32.

In his declaration, Burrell testified that Martinez's testimony was inaccurate because rifles other than the SKS and AK-47 could have fired 7.62 rounds. He also indicated that the wound in the first victim's head would appear to be caused by a .45 caliber bullet while the wound in the second victim's body appears to have been caused by a rifle round. D.E. 13-1, p. 50-51. Martinez did not testify that only the AK-47 or SKS can fire 7.62 rounds, only that they were consistent with such rounds. Further, she did not testify to what round killed each victim. D.E. 8-35, p.41–42.

Burrell also indicated that Gaytan could not have fired an AK-47 because he would have suffered from burns if he did not utilize gloves, and that a person with "Gaytan's stature and physical limitations would not have been able to fire shots into the house as indicated in the photos." D.E. 13-1, p. 50-51.  Gaytan clarified this statement indicating that his short arms would not have been able to fire a long gun. D.E. 19, p. 23.  Martinez did not testify that Gaytan fired a rifle and these statements do not touch on her testimony.

As Gaytan indicated in his objections, the main purpose of hiring a ballistics expert was to "help meet, rebut, and destroy Ms. Martinez's testimony."  D.E. 19, p. 24.  Because Burrell's testimony does not contradict Martinez's testimony, Gaytan's claims are speculative and fail to demonstrate that Burrell's testimony would have been favorable or that its absence was prejudicial.  The Magistrate Judge's recommendation on those issues is not clearly erroneous.   Accordingly, Gaytan has not shown that the state court's adjudication was an unreasonable application of clearly established federal law.

**Prejudice Prong**.   Citing to *Rompillla*, Gaytan argues that the state court's recommendation was contrary to or an unreasonable application of federal law because it failed to discuss the prejudice prong of *Strickland*.  D.E. 19, p. 22.  As discussed above, the convicting court addressed the prejudice prong in its order. Further, *Rompilla* is distinguishable.

In *Rompilla*, the state court never reached the second prong under *Strickland* requiring prejudice because it found the petitioner's representation to be adequate on the first prong.  545 U.S. at 390.  After deciding that the state court's application of *Strickland* was unreasonable as to the first prong, the Supreme Court conducted a de novo examination

that included the prejudice prong. *Id*. *Rompilla* does not support the proposition that a state court adjudication is contrary to or an unreasonable application of Supreme Court law because it failed to discuss certain portions of a petitioner's claim. As indicated previously, under *Johnson* and *Richter*, a valid adjudication does not require a state court to analyze and discuss every argument presented by a petitioner.[8]

**Distinguishable Cases**. The Magistrate Judge did not err by concluding that *Hinton*, 571 U.S. at 263, and *Haines*, 803 F.3d at 713, were distinguishable. In his corrected memorandum in support of the petition, Gaytan cites to *Hinton* to support the proposition that "a defense lawyer must obtain an expert to counter the state's expert witness." D.E. 3, p. 31. This is incorrect. In *Hinton*, a case not about habeas corpus nor subject to AEDPA, the Supreme Court held that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." 803 U.S. at 274. The case does not indicate that Rogers must hire an expert. Moreover, there is no evidence that Rogers made this decision based on a misunderstanding of evidentiary principles or fundamental points of law. Instead, Rogers chose not to hire a ballistics expert based on strategy.

---

[8] Gaytan does not cite to *Rompilla* to support an assertion that his attorneys performed unreasonably like the petitioner's attorney in *Rompilla*. Such an argument was not before the Magistrate Judge, and it is improper before this Court. *See generally Hale v. Young*, 584 F. App'x 246, 247 (5th Cir. 2014). In any event, the two cases are distinguishable. In *Rompilla*, the defense counsel failed to present mitigation evidence contained in a post-conviction file that was public and readily available despite being warned of it by the prosecution. 545 U.S. at 375. Here, Rogers was aware of Martinez's testimony and made a strategic choice to focus on other portions of the case.

Gaytan also argues that *Haines* is applicable because Martinez's expert testimony made Valent's inconsistent testimony seem insignificant because she carried "an aura of special reliability." D.E. 19, p. 5. Gaytan's reliance on *Haines* is misplaced. In *Haines*, defendants appealed their conviction to the Fifth Circuit and argued that the agent's testimony was improper. 803 F.3d at 719-20. The Fifth Circuit held that the district court erred by not adequately differentiating between the agent's lay and expert testimony at trial. *Id.* at 732. By failing to do so, the agent's lay testimony was able to gain an aura of special reliability. *Id*. at 731 (quoting *United States v. York*, 572 F.3d 415, 425 (7th Cir. 2009)). In this case, Martinez never testified as a lay witness. There was no risk that the jury gave Martinez's testimony any special consideration that was not warranted by her status as an expert.

**Conclusion**. The Magistrate Judge did not err in concluding that Gaytan failed to satisfy his burden to show that the convicting court's order was based on unreasonable fact findings or was contrary to, or involved an unreasonable application of, clearly established federal law. The record supports a finding that the decision not to hire a ballistics expert was within the realm of reasonable trial strategy, defeating the first *Strickland* prong and eliminating the claim. The Court OVERRULES Gaytan's objections based on his claim of ineffective assistance of trial counsel.

### b. Appellate Attorney Ron Barroso Was Not Ineffective

Gaytan also argues that the Magistrate Judge erred by rejecting Gaytan's claim of ineffective assistance of appellate counsel. In particular, Gaytan claims that Barroso was ineffective because he failed to argue on appeal that Eloy Silva was a jailhouse informant

such that a jury instruction[9] limiting consideration of his testimony was required by the Texas Code of Criminal Procedure.[10]  D.E. 19, p. 26–29.

The plain language of the code indicates that for the jailhouse informant rule to apply, both the witness and the defendant must be imprisoned or confined in the same correctional facility when the incriminating statements were made.  The code states in full:

> A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest *during a time when the person was imprisoned or confined in the same correctional facility as the defendant* unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

Tex. Code Crim. P., art. 38.075(a) (emphasis added).

The Magistrate Judge did not err by determining that the convicting court impliedly found (and reasonably could find) that Silva was not a jailhouse informant.  It is undisputed that when Silva spoke to Gaytan, neither party was imprisoned or confined.  D.E. 8-35, p. 199-200.  As the Magistrate Judge correctly pointed out, other courts have applied the jailhouse informant rule as written.  *Hardesty v. State*, No. 03-18-00546-CR, 2019 WL 4068564, at *3 (Tex. App. Aug. 29, 2019, pet. ref'd); *Evens v. Director*, No. 3:17-CV-2032-C-BN, 2020 WL 5993642 (N.D. Tex. Oct. 9, 2020), *adopting Evens v. Director,* No. 3:17-cv-2032-C-BN, 2020 WL 5995976 (N.D. Tex. Sept. 18, 2020).

---

[9]  "Unless there is a clear showing that the errors complained of were so gross or the trial was so fundamentally unfair, habeas corpus will not lie to set aside a conviction on the basis of improper [jury] instructions . . . ." *Young v. Alabama*, 443 F.2d 854, 855 (5th Cir. 1971).

[10]  Gaytan also argued in his petition (D.E. 1) that Barroso was ineffective in failing to raise on appeal a due process argument regarding the prejudicial nature of Silva's testimony and an issue regarding violation of the motion in limine and failure to grant a mistrial.  Neither of those alleged deficiencies in Barroso's appellate work are addressed in Gaytan's objections now before the Court.

Citing to House Research Organization, Gaytan argues that the jailhouse rule was devised to mitigate the risk of fabricated confessions associated with jailhouse informants seeking, in exchange, lighter sentences or goodwill.  D.E. 19, p. 28.  That risk is present, he contends, any time the informant is in custody or incarceration is imminent, regardless of the custodial status of the person allegedly confessing.  Whatever the purpose of the statute may be, the House Research Organization never defines what a jailhouse informant is outside of the precise terms of this provision.

**Conclusion**.  The Magistrate Judge did not err in concluding that Gaytan failed to satisfy his burden to show that the convicting court's order was based on unreasonable fact findings or was contrary to, or involved an unreasonable application of, clearly established federal law.  Because the circumstances by which Silva allegedly received Gaytan's confession do not comply with the code, it was reasonable for the convicting court to conclude that Barroso was not ineffective for omitting this ground on appeal.  The Court OVERRULES Gaytan's objections based on his claim of ineffective assistance of appellate counsel.

### 2. *Brady* Violation

Gaytan's complaint regarding a *Brady* violation assumes the success of his previously rejected arguments regarding the standard of review.  D.E. 19, p. 29–31.  Gaytan's *Brady* objection is therefore lacking its foundation.  As previously indicated, under *Johnson* and *Richter*, the state court's recommendation is a valid adjudication on the merits even if the decision fails to specifically analyze Gaytan's arguments regarding *Brady v. Maryland*.

The Magistrate Judge indicated in the M&R that the state court's recommendation was not contrary to or an unreasonable application of federal law.  D.E. 14, p. 39–40. Because no specific ruling on this issue was provided by the state court, the Magistrate Judge properly "hypothesized the reasons that supported, or could have supported, the denial consistent with Supreme Court precedent." *Floyd*, 894 F.3d at 161 (citing *Hittson*, 576 U.S. at 1028).

The record before the state court contained conflicting affidavits from Mann (the lead prosecutor) and Perkins (the second chair defense counsel).  Perkins stated that he received no *Brady* materials from the State regarding Silva, specifically noting the extent of Silva's history as an informant for prosecutors and his conviction for impersonating a United States marshal.  D.E. 8-52, pp. 169-70.  In opposition, Mann indicated that prior to trial, he informed Perkins of Silva's criminal history and history of providing information to prosecutors.  He further testified that there was no informant source file for Silva because prosecutors were not required to keep such files at the time. D.E. 8-53, p. 37.  While Gaytan refers to a suppressed informant source file, there is no evidence in the record that such a file exists.

In cases involving credibility disputes, the Fifth Circuit has concluded that a district court should defer to the state court's factual findings when there is sufficient evidence to support the state court's conclusion.  *Trottie v. Stephens*, 720 F.3d 231, 242–43 (5th Cir. 2013).  In this case, the state court impliedly made a credibility judgment in favor of Mann based on the affidavits before it and the trial record, which reflects vigorous cross-examination and impeachment of Silva based on his rap sheet and prior cooperation with

the State.  Gaytan has provided no reason to disturb that conclusion.  Accordingly, Gaytan

has failed to show that this credibility determination is unreasonable as required by

AEDPA, and the Court OVERRULES Gaytan's *Brady* objection to the M&R.

### 3. Actual Innocence

Gaytan contends, for the first time in his objections, that his actual innocence claim

can be a freestanding claim, without demonstrating an accompanying constitutional

violation[11].  Alternatively, he argues that his actual innocence claim is cognizable because

it is filed in conjunction with his claims of ineffective assistance of counsel under the Sixth

Amendment. D.E. 19, p. 15–19.

**No Freestanding Claim**.  The Supreme Court has not decided the issue of whether

a freestanding claim of actual innocence is viable.  Rather, the Supreme Court in *Herrera

v. Collins*, 506 U.S. 390, 404 (1993), discussed such a claim in a hypothetical.  *Id*. at 417

("We may assume, for the sake of argument in deciding this case, that in a capital case a

truly persuasive demonstration of 'actual innocence' made after trial would render the

execution of a defendant unconstitutional, and warrant federal habeas relief if there were

no state avenue open to process such a claim.").  Later, the Supreme Court reserved the

issue. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a

prisoner may be entitled to habeas relief based on a freestanding claim of actual

innocence.").

---

[11]   Issues raised for the first time in objections to the report of a magistrate judge are not properly before the district
judge.  *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001).  In his summary judgment response, Gaytan only
argued that his actual innocence claim was accompanied by a constitutional claim.  D.E. 13, p. 6.  His objection that
the claim can be freestanding may be overruled because he failed to raise it before the Magistrate Judge.

In this void, the Fifth Circuit has repeatedly held that it does not recognize freestanding claims of actual innocence. *In re Stewart*, 833 F. App'x 413, 413 (5th Cir. 2021) (citing *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009)); *Floyd*, 894 F.3d at 155. Because the Fifth Circuit rejects the claim and the Supreme Court has not approved it, Gaytan cannot demonstrate that the convicting court's rejection of his freestanding actual innocence claim is contrary to federal law as determined by the Supreme Court. The Court therefore OVERRULES Gaytan's objections to the M&R insofar as it holds that he cannot prevail on a freestanding actual innocence claim.

**Accompanied Claim**. In addressing an actual innocence claim connected to a constitutional claim, the Magistrate Judge reasoned that Gaytan's analysis is backwards. A "claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (citing *Herrera*, 506 U.S. at 404). Gaytan seeks to use his constitutional claims as a gateway through which his actual innocence claim is asserted.

Because none of Gaytan's claims are procedurally barred, his claim of actual innocence has no relevance to this Court's determination. He has not shown that the existence of a separate constitutional claim transforms his actual innocence claim from a freestanding claim to something else. More importantly, he has cited no authority for using a constitutional claim to support a separate actual innocence claim, thus failing to show that the convicting court's rejection of the claim was contrary to, or an unreasonable

application of, federal law.  The Court OVERRULES Gayton's claim for actual innocence despite the fact that it is brought in conjunction with a constitutional claim.

**Constitutionally Intolerable Conviction**.  Even if a freestanding claim of actual innocence exists, Gaytan has not met the extraordinarily high standard suggested by the Supreme Court.  *Herrera*, 506 U.S. at 417.  That Court has described the standard as requiring a showing that "evidence that could not have been obtained at the time of trial clearly establishes [the] petitioner's innocence.[12]  *In re Davis*, 557 U.S. 952, 952 (2009).

As newly discovered evidence, Gaytan only presents the testimony of Cruz Salazar, a new alibi witness who did not testify at trial, and video evidence that will impeach Arnold Valent, who identified him at the scene of the crime. D.E. 19, p. 16–17.  By Gaytan's own argument, the video evidence he relies on was available during the trial, and he faults his attorneys for failing to present it.  D.E. 19, p. 17.   Moreover, his alibi witness would not clearly establish his innocence, as Gaytan's location at the time of the crime is contradicted and he is implicated in the crime by other witnesses.

The trial included the following testimony adverse to Gaytan and his alleged alibi:

- Valent.  Valent, an eyewitness, identified Gaytan as the shooter at the scene.  Valent admitted to initially lying about not knowing who the shooter was, explaining that he was afraid for his life.

- Flores.  Iris Flores testified that, on the night of the crime, Gaytan obtained a blue car from her and left the house with Salazar for a few hours.  Gaytan came home later that night without the car and told her

---

[12] Gaytan contends that the standard for determining a freestanding claim of actual innocence should be the standard articulated in *Schlup* and *House v. Warden*, 547 U.S. 518 (2006). D.E. 19, p. 15–17, 20.  In *Schlup*, the Supreme Court indicated that the standard for determining a claim of actual innocence, when that claim is used as a gateway for the petitioner's otherwise procedurally barred claim, is that in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. 513 U.S. at 327.  That standard is not applicable because Gaytan is not using his actual innocence claim as a gateway for his procedurally barred claims.

that the car was left behind someone's house.  When Flores returned with the car, Gaytan wiped the keys with his shirt.

- Gonzalez.  Federico Gonzalez testified that, on the night of the crime, Gaytan left his home with Salazar in a blue car for a few hours, and he returned "freaked out."

- Gates.  Prior to the shooting, Valent and other individuals broke into Gaytan's truck and stole a bag with money inside.  Eleno Gates, Gaytan's cousin, testified that Gaytan was with him, Gonzalez, Salazar, and Flores on the night of the shooting, and Gaytan had told him that he was robbed and wanted to "handle up," which he interpreted as to get his stuff back. Gaytan left his house later that night and returned in less than an hour.

- Silva.  Eloy Silva testified that Gaytan made incriminating statements to him regarding the shooting.

It cannot be said that, in the face of this evidence, no juror would find Gaytan guilty beyond a reasonable doubt simply by the addition of his proffered alibi evidence.

Nevertheless, Gaytan asserts that Salazar's alibi evidence was deemed sufficiently credible by the prosecutors because the charges against him were dropped.  But that is speculation.  The stated basis for Salazar's dismissal was insufficient evidence to convict beyond a reasonable doubt (*see* D.E. 8-52, p. 87).  While there was eyewitness evidence connecting Gaytan to the crime, there was no such evidence as to Salazar.  Thus, the prosecutor's treatment of Salazar's charges was not necessarily an assessment of credibility.

Gaytan does not have sufficient evidence to support the extraordinary claim that his conviction is constitutionally intolerable, a claim that has been associated with death penalty cases, rather than life imprisonment.  Gaytan did not clearly bring this claim in his habeas petition or in response to the State's summary judgment motion.  It is thus procedurally improper as well as being unpersuasive. *See generally Hale v. Young*, 584 F.

App'x 246, 247 (5th Cir. 2014). Gaytan's objection to the denial of his actual innocence claim, to the extent that it is based on a constitutionally intolerable conviction, is OVERRULED.

### C. Certificate of Appealability

The Magistrate Judge recommended that the Court deny Gaytan a certificate of appealability. Gaytan does not object to this recommendation. After a careful review, the Court agrees with the Magistrate Judge's finding that reasonable jurists would not find it debatable that Gaytan failed to state a claim for a violation of a constitutional right. The Court therefore DENIES a certificate of appealability.

### CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the M&R, Gaytan's objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court OVERRULES Gaytan's objections on their merits and ADOPTS the findings and conclusions of the Magistrate Judge as supplemented herein. Accordingly, the Court GRANTS Respondent's motion for summary judgment (D.E. 9) and DISMISSES Gaytan's petition (D.E. 1). The Court DENIES Gaytan's request for a certificate of appealability.

ORDERED this 29th day of March, 2021.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE